UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DANNY CONRAD LACASSE, JR., a/k/a | ) | Civil Action No.: 4:06-2529-TLW-TER |
| DANNY LACASSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| HORRY COUNTY, SOUTH CAROLINA; | ) | |
| J. GREGORY HEMBREE, Chief Solicitor; | ) | |
| BRAD RICHARDSON, Assistant Solicitor; | ) | |
| TOM FOX, Director of Horry County | ) | |
| Detention Center; and PHILLIP E. | ) | |
| THOMPSON, Sheriff of Horry County; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. At all times relevant to this action, Plaintiff was a pretrial detainee at the Horry County Detention Center (the Detention Center). Plaintiff alleges that the Detention Center is overcrowded, which causes unhealthy conditions, and that he has been denied medical care and legal assistance.[1] On January 19, 2007, Plaintiff filed a Notice of Change of Address (Document # 29), which appears to be a private address in Spartanburg, South Carolina, indicating that Plaintiff is no longer incarcerated at the Horry County Detention Center.

---

[1]Plaintiff also asserted claims regarding his pending criminal case against Defendants Hembree, Richardson, and Thompson. The undersigned filed a Report and Recommendation (Document # 6), recommending that those Defendants be dismissed without prejudice and without issuance and service of process on September 18, 2006.

Presently pending before the Court are Plaintiff's Motion for Preliminary Injunction (Document # 3), Defendant Horry County's Motion to Dismiss (Document # 15) and Defendant Tom Fox's Motion for Summary Judgment (Document # 30).  Following Defendant Horry County's Motion to Dismiss, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motion to Dismiss and the possible consequences if he failed to respond adequately.  Plaintiff's Response was due December 21, 2006.  Plaintiff filed Responses (Document #s 21, 26) on November 21, 2006, and December 18, 2006.  Following Defendant Tom Fox's Motion for Summary Judgment, the undersigned again issued a Roseboro Order, advising Plaintiff of the Motion for Summary Judgment and the possible consequences if he failed to respond adequately.  Plaintiff's Response was due March 5, 2007.  Plaintiff failed to respond by the deadline, and, on April 9, 2007, the undersigned issued an Order (Document # 36) directing Plaintiff to file a Response within ten days or case may be dismissed for failure to prosecute.  Plaintiff has not filed a Response.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  Because these are dispositive motions, this Report and Recommendation is entered for review by the district judge.

## II.     FACTUAL ALLEGATIONS

Plaintiff asserts the following factual allegations regarding his conditions of confinement at the Detention Center:

II. Sheriff Thompson and Dir. Tom Fox, being policy makers of the Horry Co. Detention Center, are responsible for policies of the HCDC. This jail has been cited for overcrowding by the SCDOC and has done nothing to relieve the problem. Inmates are locked in cells allowing approx. 25 sq. ft. per inmate for 21 hours a day. In my pod, AI, we are taken outside for an hour once a week, sometimes it's 2 weeks

between outside exercise. The overcrowding and restriction to the outside is causing unhealthy conditions, i.e. staph infections, muscle atrophy, and violence.

III. I've also been denied medical treatment. I've had a toothache for the past 6 months. The jail won't give me access to a dentist even though I'll agree to just an extraction. I'm also prescribed to wear corrective lenses. The jail refuses to provide eyewear or to see an optician to renew my prescription. I've been in custody for over a year. My eyes maybe irreparably damages from not wearing prescribed corrective lenses. Further, my extreme near sightedness puts me a danger to injury from objects in my environment.

IV. The jail has refused to help me with legal technicalities, e.g. notarizations and copies of legal papers. This policy deprives me of my right to access to the courts. The unavailability to access to rules has caused me to be unable to file an appeal on a court order.

V. The County of Horry is responsible in that the supervisory and training of its officials is grossly inadequate. The violations of inmates rights are so basic to officials duties, the need for training is obvious.

Complaint at ¶¶ II-V.

## III.    MOTION FOR PRELIMINARY INJUNCTION

On September 13, 2006, Plaintiff filed a Motion for Preliminary Injunction, asking the Court

to order

defendants, their successors, agents, employees and all persons acting in concert with them  to provide plaintiff and other inmates with outside exercise time of at least 3 hours per week, to relieve the overcrowding, to provide medical treatment.  In addition, to also reform the judicial system to provide due process and the progression of a case in an efficient manner.  Further, that the jail be directed to assist in the filing of motions and technical rules of communicating with the court.

Plaintiff's Motion at 2.

Plaintiff's Motion should be denied to the extent Plaintiff is seeking injunctive relief

regarding his confinement at the Detention Center.  Claims for injunctive and declaratory relief

become moot when a prisoner is no longer subjected to the condition about which he complained.

Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).  Because Plaintiff is no longer incarcerated at the Detention Center, as evidenced by his Notice of Change of Address, his request for injunctive relief regarding his confinement is moot.

Plaintiff's request for an order reforming the state judicial system is also improper and should be denied.  To satisfy case or controversy requirement of Article III, plaintiff must show a personal threat of ongoing or future harm, the likelihood that the wrongful behavior will occur or continue, and that the threatened injury is impending. Friends of the Earth, Inc. v. Laidlaw Environmental Servs., 528 U.S. 167, 190 (2000); see also City of Los Angeles v. Lyons, 461 U.S.95, 101-102 (1983) (plaintiff must face real and immediate threat of future injury). The Court in Bloodgood v. Garranghty, 783 F.2d 470 (4th Cir. 1986) held that:

> An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action.  "Injunction issues to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931).  As one circuit court has noted recently, "bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.  The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C.Cir.1985).

Bloodgood, 783 F.2d at 475.

Section 1983 by its terms confers authority to grant equitable relief as well as damages, but it permits suit in equity only when that is the proper proceeding for redress. Plaintiff must show real and immediate threat of injury. See Los Angeles v. Lyons, 461 U.S. 95 (1983).  Moreover, principles of federalism limit the scope of federal court's power to intervene in internal operations of state and local agencies. Rizzo v. Goode, 423 U.S. 362, 378-80 (1976); Taylor v. Freeman, 34 F.3d 266, 269

(4th Cir. 1994). Importantly, the plaintiff has not shown that he is currently subject to a real and immediate threat of harm. See Los Angeles v. Lyons, 461 U.S. 95 (1983). Therefore, his Motion for Preliminary Injunction should be denied.

## IV.     MOTION TO DISMISS

### A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990). A motion to dismiss under Rule 12 tests the sufficiency of the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. It does not resolve conflicts of facts, the merits of the claim, or the applicability of defenses asserted. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegations in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,1134 (4th Cir. 1993).

### B.     Legal Analysis Applicable to Pretrial Detainees

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at

671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

**C.    Discussion**

Plaintiff asserts the following allegation as to Horry County in his Complaint: "The County of Horry is responsible in that the supervisory and training of its officials is grossly inadequate. The violations of inmates rights are so basic to officials duties, the need for training is obvious." Complaint at ¶ V.

Horry County argues that it is entitled to be dismissed as a party because Horry County is not responsible for the supervision of the Detention Center, a responsibility delegated to the Sheriff of Horry County exclusively.  Pursuant to S.C. Code Ann. § 24-5-10, "the Sheriff shall have custody if the jail in his county."  Furthermore, the South Carolina Supreme Court has held that county

detention centers are "jails" within the meaning of S.C. Code Ann. § 24-5-10. <u>Rowton v. Sparks</u>, 270 S.C. 637, 639, 244 S.E.2d 214, 216 (1978). In <u>Grayson v. Peed</u>, 195 F.3d 692, 697-98 (4th Cir. 1999), the Fourth Circuit held that a county is not subject to liability under 42 U.S.C. § 1983 where the Sheriff is charged with running the jail and the county has no control over policy within the jail. Accordingly, no supervisory liability rests with Horry County as alleged by Plaintiff, and Horry County's Motion to Dismiss should be granted.

## V.    MOTION FOR SUMMARY JUDGMENT

### A.    Rule 41(b) Dismissal

A complaint may be dismissed pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. <u>Ballard v. Carlson</u>, 882 F.2d 93 (4th Cir. 1989), <u>cert</u>. <u>denied</u> 493 U.S. 1084 (1990); <u>Chandler Leasing Corp. v. Lopez</u>, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

    (1)    the degree of plaintiff's responsibility in failing to respond;

    (2)    the amount of prejudice to the defendant;

    (3)    the history of the plaintiff in proceeding in a dilatory manner; and,

    (4)    the existence of less drastic sanctions other than dismissal.

<u>Davis v. Williams</u>, 588 F.2d 69 (4th Cir. 1978).

In the present case, Plaintiff is proceeding <u>pro se</u> so he is entirely responsible for his actions. It is solely through Plaintiff's neglect, and not that of an attorney, that no response has been filed. Plaintiff has failed to respond to Defendant's Motion for Summary Judgment, despite two orders directing him to do so and notifying him of the consequences for failure to respond. In fact, Plaintiff

has filed nothing in this action since his Notice of Change of Address on January 19, 2007. The undersigned concludes Plaintiff has abandoned his lawsuit. No other reasonable sanctions are available. Accordingly, it is recommended that this action against Defendant Tom Fox be dismissed pursuant to Rule 41(b), Fed.R.Civ.P. for Plaintiff's failure to respond to his Motion for Summary Judgment. In the alternative, it is recommended that Defendant Tom Fox's Motion for Summary Judgment be granted.

### B.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.    Discussion

#### 1.    Allegations/Assertions of Parties

Plaintiff alleges that his constitutional rights have been violated because the Detention Center is overcrowded, has denied him access to a dentist or an optician, and has denied him any legal assistance.  He seeks both monetary damages and injunctive relief.

Defendant Fox argues that he is entitled to sovereign immunity in his official capacity, he is entitled to qualified immunity, no evidence of supervisory liability exists, and Plaintiff has failed to present evidence that he has suffered a serious physical or mental injury.

#### 2.    Injunctive Relief

At the outset, it is important to reiterate that Plaintiff is no longer incarcerated at the Detention Center.  Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition about which he complained. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).  As such, Plaintiff's claims for injunctive relief are moot, and only his claims for monetary relief remain pending.

3.      Sovereign Immunity

In the case of Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105

L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh

Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties,
> but it does not provide a federal forum for litigants who seek a remedy against a State
> for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits
> unless the State has waived its immunity . . . or unless Congress has exercised its
> undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 67 (internal citations omitted).

The Eleventh Amendment immunity granted to the states "applies only to States or

governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes,"

but the court found that state agencies, divisions, departments and officials are also entitled to the

Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit

against state officials acting in their official capacities is actually against the office itself, and

therefore, against the state. Id. at 71.  State officials may only be sued in their individual capacities.

Id.

Defendant Fox is the Director of the Horry County Detention Center and is employed by the

Horry County Sheriff.  See Fox Aff. at ¶ 1.  In South Carolina, Sheriffs are state officials and are

entitled to Eleventh Amendment immunity from monetary damages in their official capacities.  See

Wall v. Sloan, No. 96-2461, 1998 WL 54938, *1 (4th Cir. Feb. 11, 1998) (citing Cromer v. Brown,

88 F.3d 1315, 1332 (4th Cir.1996); Gulledge v. Smart, 691 F.Supp. 947, 954 (D.S.C.1988), aff'd,

878 F.2d 379 (4th Cir.1989); Cone v. Nettles, 417 S.E.2d 523, 524-25 (S.C.1992)).  As Defendant

Fox is the director of the Detention Center which is under the control of the Sheriff of Horry County,

-10-

he is also an arm of the state.   Therefore, in his official capacity, Fox is entitled to Eleventh Amendment immunity from monetary damages.

Plaintiff has not sued Fox in his individual capacity as the allegations in the complaint state only that Fox is a policy maker for the Detention center and is responsible for the policies of the Detention Center.   Plaintiff sets forth no factual allegations that Fox himself violated any of Plaintiff's constitutional rights.   Therefore, summary judgment is appropriate as to Fox.

4.        Qualified Immunity

Even if Plaintiff has asserted claims against Fox in his individual capacity, he is entitled to qualified immunity because he has not violated any of Plaintiff's clearly established rights.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity. The Court in Harlow  held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

> In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:
>
> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993, 995 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S.

824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals

explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials
> can perform their duties free from the specter of endless and debilitating lawsuits.
> Without such immunity, the operations of government would be immobilized.
> Permitting damages suits against government officials can entail substantial social
> costs, including the risk that fear of personal monetary liability and harassing
> litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining

an official's entitlement to qualified immunity is summary judgment." Id. at 261.  The Torchinsky

court held that an official's entitlement to qualified immunity is based upon an "objective

reasonableness" standard.  Id.  "The very idea of reasonableness requires that courts accord

interpretive latitude to officials judgments."  Id. (citing Sevigny v. Dicksey, 846 F. 2d 953 (4th

Cir.1988)).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still

entitled to qualified immunity if a reasonable person in the "official's position could have failed to

appreciate that his conduct would violate" those rights.  Id. (citing Collinson v. Gott, 895 F. 2d 994

(4th Cir. 1990)).  As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965

(4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will

support an award in damages under 42 U.S.C. § 1983." Id. at 967. Therefore, if a particular action

by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity unless

there is clearly established case law demonstrating that the alleged conduct is violative of the

Constitution.

In <u>Maciariello v. Sumner</u>, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of

Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability
> for money damages so long as their conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable person would have known.
> Moreover, there are two levels at which the immunity shield operates. First, the
> particular right must be clearly established in the law.  Second, the manner in which
> this right applies to the actions of the official must also be apparent.  Officials are not
> liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F. 2d at 298 (citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly

established in law, and (ii) the application of that right to the actions of the official must be apparent.

Plaintiff in this case has not done so.  As stated above, Plaintiff has not even alleged that Fox himself

violated his constitutional rights. Clearly, Fox has not "transgressed bright lines." <u>Maciariello</u>, 973

F. 2d at 298.  Therefore, Plaintiff's claims against Fox should be dismissed on the basis of qualified

immunity as well.

5.    Supervisory Liability

To the extent that Plaintiff's complaint can be construed to allege supervisory liability on the

part of Fox, such a claim must fail.  Under the doctrine of supervisory liability, an employer or

supervisor is not liable for the acts of their employees, absent an official policy or custom which

results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978); <u>Fisher v. Washington Metro. Area Transit Authority</u>, 690 F.2d 1133,

1142-43 (4th Cir.1982). The employer or supervisor may only be held liable if the plaintiff can show

that he had actual knowledge of the specific danger, but was deliberately indifferent to the plaintiff's

-13-

needs despite his knowledge of this danger.  Slakan v. Porter, 737 F.2d 368 (4th Cir.1984). Plaintiff

has failed to meet this burden in that he has failed to show or even allege that Fox was responsible

for a policy or custom that resulted in illegal action or that he has been deliberately indifferent to the

needs of Plaintiff.  As such, any claim of supervisory liability fails as a matter of law.

> 6.    Serious Physical or Mental Injury

Finally, Plaintiff has failed to present any evidence that he suffered a serious or significant

physical or emotional injury resulting from the conditions of his confinement.

As stated above, confinement conditions of pretrial detainees are to be evaluated under the

due process clause rather than the Eighth Amendment prohibition against cruel and unusual

punishment. Bell, 441 U.S.at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial

detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship

to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.

Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992) (citing Martin v. Gentile, 849 F.2d 863, 870

(4th Cir.1988)). Prison officials act with the requisite culpable intent when they act with deliberate

indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.)

(citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75

F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for

whether a prison official acts with deliberate indifference is a subjective one: the official must "know

of and disregard an excessive risk to inmate health and safety; the official must both be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." Id. However, due process also requires the State to provide pretrial

detainees with some minimal level of food, living space, and medical care, and "the failure to

provide that level of necessities violates due process-even though the conditions imposed serve some

ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985),

cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that

he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on

the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert. denied, 510

U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or

emotional injury resulting from challenged conditions to withstand summary judgment on prison

conditions claim. Id. at 1380-1381. To survive summary judgment, the plaintiff must show more

than de minimis pain or injury.

Although an issue of fact may exist as to overcrowding and/or the dental or optical care

offered at the Detention Center, Plaintiff has not shown any significant physical or emotional injury

as a result of any violation to raise an issue of fact for trial.  Plaintiff alleges that overcrowding and

lack of exercise can cause "unhealthy conditions," but has not alleged or provided any evidence that

he has suffered any significant physical or emotional injury as a result.  In addition, although he

alleges that his eyes may be irreparably damaged from failure to see an optician to obtain a new

prescription for eyeglasses, he has not alleged or provided any evidence that he has in fact suffered

any injury.  Finally, although Plaintiff alleges that he has suffered a toothache for six months, such

an injury does not rise to the level of a significant physical injury.  As such, summary judgment is

appropriate on Plaintiff's conditions of confinement claims.

## VI.    CONLCUSION

In light of the above analysis, it is recommended that Plaintiff's Motion for Preliminary

Injunction (Document # 3), be denied, Defendant Horry County's Motion to Dismiss (Document #

15) be granted and Defendant Tom Fox's Motion for Summary Judgment (Document # 30) be

granted.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 14, 2007
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**